ERIC A. SEITZ
ATTORNEY AT LAW
A LAW CORPORATION

ERIC A. SEITZ          1412
DELLA A. BELATTI       7945
JONATHAN M.F. LOO      10874
820 Mililani Street, Suite 502
Honolulu, HI 96813
Tel. (808) 533-7434
E-mail(s):   eseitzatty@yahoo.com
             daubelatti@yahoo.com
             jloo33138@yahoo.com

Attorneys for Plaintiffs
UALANI GOUVEIA and
DENNIS GOUVEIA, Individually, and on
Behalf of D.G, a Minor

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| UALANI GOUVEIA and DENNIS GOUVEIA, Individually, and on Behalf of D.G., a minor, | CIVIL NO. 23-00378 (Other Civil Rights) |
| Plaintiffs | COMPLAINT FOR DECLARA-TORY AND INJUNCTIVE RELIEF AND DAMAGES; DEMAND FOR JURY TRIAL |
| vs. | |
| RICK BLANGIARDI, individually, and in his Official Capacity as Mayor of the City and County of Honolulu; DANA M.O. VIOLA, Individually, and in her Official Capacity as Corporation Counsel; STEVEN S. ALM, Individually, and in his Official Capacity as Prosecuting Attorney of Honolulu; | |

ARTHUR JOE LOGAN, Individ-      )
ually, and in his Official Capacity      )
as Chief of Police; RADE VANIC,      )
Individually, and in his Official      )
Capacity as Acting Chief of Police;      )
JOSHUA NAHULU; ERIK SMITH;      )
JAKE BARTHOLOME; ROBERT      )
LEWIS III; and DOE DEFEND-      )
ANTS 1-20,      )
                                                          )
          Defendants.                      )
_____ )

## COMPLAINT FOR DECLARATORY
## AND INJUNCTIVE RELIEF AND DAMAGES
## I.

## <u>INTRODUCTION</u>

1.      On September 12, 2021, then 14-year-old D.G. suffered life-threatening and permanently-debilitating injuries when the vehicle he was riding in as a passenger was pursued and run off the road by Honolulu Police Department officers.

2.      At around 3:30 a.m., the police officers—in uniform and acting under the authority of the law—initiated a dangerous and unauthorized pursuit of the vehicle in which none of the three police vehicles activated their overhead lights or sirens.

3.      The officers chased the car for several minutes in the dark and through populated residential and commercial areas at speeds exceeding 100 miles per hour until the lead patrol car impacted the rear bumper of the car, causing it to veer sideways and run off the road.

4.     The car went through a ditch and became airborne, tumbling over a concrete retaining wall and ejecting D.G. from the vehicle before coming to rest in the front driveway and yard of a nearby home.

5.     After causing the catastrophic accident, the three Honolulu Police Department officers simply continued driving past the scene, circled back in the opposite direction, fled the area, and thereafter conspired to cover up their involvement in the events precipitating the accident.  When the officers later were dispatched to the scene they feigned as if they did not know what had occurred and purposely interfered with the investigation.

6.     Plaintiffs contend that D.G. was wrongfully deprived of his constitutional right to substantive due process, including his right to bodily integrity in violation of the Fourteenth Amendment of the Constitution of the United States and Article I of the Constitution of the State of Hawaii, *inter alia*.

7.     Plaintiffs contend that D.G. was subjected to excessive and unreasonable force when the car in which he was a passenger was forced off the road in violation of the Fourth Amendment of the Constitution of the United States and Article I of the Constitution of the State of Hawaii, *inter alia*.

8.     Plaintiffs contend that the Honolulu Police Department's motor vehicle pursuit policy, Policy 4.01, is defective in that it gives officers sole discretion to initiate a pursuit and fails to adequately instruct officers when a pursuit should not

be initiated or discontinued and is therefore deliberately indifferent to the known and demonstrable risks of death, bodily injury, and damage to property suffered by the public and the subjects being pursued.

9.    In addition to having and maintaining a defective policy, Plaintiffs further contend that the Honolulu Police Department has failed to adequately train its officers when it is proper to initiate a motor vehicle pursuit, what procedures they need to follow, and when officers should discontinue a pursuit.  Based on the known and demonstrable risks of death, bodily injury, and damage to property suffered by the public and the subjects of these motor vehicle pursuits, this failure to train demonstrates deliberate indifference.

10.    Plaintiffs further contend that the Mayor, the Prosecuting Attorney, the Chief of Police, and the Corporation Counsel of the City and County of Honolulu constitute an enterprise that has engaged in racketeering under H.R.S. § 842, et. seq., by committing acts of extortion to obtain or exert control over Plaintiffs' property, that being Plaintiff's cause of action against the City and County of Honolulu in 1CCV- 21-0001150 KTM thereby depriving Plaintiffs of the value of their property/cause of action.

11.    For nearly two years Plaintiffs have tried to avail themselves of the legal process to recover for the damages D.G. suffered; the Defendants have engaged as an enterprise in racketeering and extortion by withholding action as public

servants in order to exert control over and devalue Plaintiffs' legal claims, refusing to discipline the officers involved in keeping with the de facto policy, practice, and custom of the City and County of Honolulu, refusing to charge the officers with crimes against D.G. as a victim, refusing to make any offers of settlement or to negotiate in good faith despite obvious liability, and refusing to accept any responsibility for the near-fatal injuries suffered by Plaintiffs' minor son.

## II.

## PARTIES

12.　Plaintiffs UALANI GOUVEIA and DENNIS GOUVEIA, Individually and on Behalf of D.G., a Minor (Plaintiffs) are and have been residents of the City and County of Honolulu, State of Hawai'i at all times pertinent hereto.  Ualani and Dennis Gouveia are the parents and legal guardians of D.G.

13.　Defendant RICK BLANGIARDI (Mayor Blangiardi) is the Mayor of the City and County of Honolulu, and is sued herein in his individual and official capacity.  Mayor Blangiardi is and has been the Mayor of the City and County of Honolulu at all times pertinent hereto.

14.　Pursuant to Section 5-103 of the Revised Charter of the City and County of Honolulu, Mayor Blangiardi is the chief executive officer of the city and except as otherwise provided, exercises direct supervision over all agencies enumerated in the charter and all other executive agencies of the city.

15.    Defendant DANA M.O. VIOLA (Viola) is Corporation Counsel for the City and County of Honolulu, and is sued herein in her individual and official capacity.  Viola is and has been the Corporation Counsel at all times pertinent hereto.

16.    Pursuant to Sections 5-201 and 5-203 of the Revised Charter, the Corporation Counsel is appointed by the Mayor with the approval of the City Council and serves as the chief legal adviser and legal representative for the City and County of Honolulu and for officers and employees of the City and County of Honolulu in matters relating to their official duties.

17.    Defendant STEVEN S. ALM (Alm) is the Prosecuting Attorney for the City and County of Honolulu, and is sued herein in his individual and official capacity.  Alm is and has been the prosecuting attorney at all times pertinent hereto.

18.    Pursuant to Sections 8-101 and 8-102 of the Revised Charter, there is a Department of the Prosecuting Attorney headed by an elected Prosecuting Attorney.

19.    Pursuant to Section 8-104 of the Revised Charter, the Prosecuting Attorney shall conduct on behalf of the people all of the prosecutions for offenses against the laws of the State of Hawaii and the ordinances and rules and regulations of the City and County of Honolulu.

20.    Defendant ARTHUR JOE LOGAN (Chief Logan) is the Chief of Police for the Honolulu Police Department, and is sued herein in his individual and official capacity.  Chief Logan has been the Chief of Police since June 14, 2022.

21.     Defendant RADE VANIC (Deputy Chief Vanic) is the Deputy Chief of Police for the Honolulu Police Department, and is sued herein in his individual and official capacity.  From June 1, 2021, up until June 14, 2022, Deputy Chief Vanic assumed the role of Acting Chief of Police for the Honolulu Police Department.

22.     Defendant JOSHUA NAHULU (Officer Nahulu) is and has been a citizen and resident of the City and County of Honolulu, State of Hawaiʻi, and is and has been employed as a police officer by the Honolulu Police Department at all times pertinent hereto.  He is being sued herein in his individual and official capacity.

23.     Defendant ERIK SMITH (Officer Smith) is and has been a citizen and resident of the City and County of Honolulu, State of Hawaiʻi, and is and has been employed as a police officer by the Honolulu Police Department at all times pertinent hereto.  He is being sued herein in his individual and official capacity.

24.     Defendant JAKE BARTHOLOME (Officer Bartholome) is and has been a citizen and resident of the City and County of Honolulu, State of Hawaiʻi, and is and has been employed as a police officer by the Honolulu Police Department at all times pertinent hereto.  He is being sued herein in his individual and official capacity.

25.     Defendant ROBERT LEWIS III (Officer Lewis) is and has been a citizen and resident of the City and County of Honolulu, State of Hawaiʻi, and is and

has been employed as a police officer by the Honolulu Police Department at all times pertinent hereto.   He is being sued herein in his individual and official capacity.

26.    DOE DEFENDANTS 1-20 ("DOE Defendants") are individuals whose true identities and capacities are as yet unknown to Plaintiffs and their counsel, despite diligent inquiry and investigation, and who acted herein as described more particularly below in connection with the breaches of duties and/or violations of law alleged herein and who in some manner or form not currently discovered or known to Plaintiffs may have contributed to or be responsible for the injuries alleged herein. The true names and capacities of DOE Defendants will be substituted as they become known.

### III.

### JURISDICTION

27.    This action arises under the Constitution and laws of the United States of America and the State of Hawaiʻi and is brought pursuant to 42 U.S.C. § 1983, *inter alia.*

28.    This Court has subject matter jurisdiction over Plaintiffs' claims involving questions of federal law under 28 U.S.C. §§ 1331 and 1343, *inter alia*. Any state law claims contained herein form part of the same case or controversy as gives rise to Plaintiffs' federal law claims and therefore fall within the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

29.     Jurisdiction supporting Plaintiffs' claims for attorneys' fees and costs is conferred by 42 U.S.C. § 1988.

30.     Venue is proper in the United States District Court for the District of Hawai'i under 28 U.S.C. § 1391(b) as all of the events or omissions giving rise to Plaintiffs' claims occurred in the District of Hawai'i.

## IV.

## FACTS

### A.     The Unlawful Pursuit

31.     In the early morning on Sunday, September 12, 2021, D.G. was socializing at the beach with several other persons when Officers Joshua Nahulu, Erik Smith, and Jake Bartholome (hereinafter collectively "Officer Defendants") arrived at the scene and caused the group to disperse.

32.      Plaintiffs are informed and believe, and thereupon allege, that because the persons who accompanied their minor son to the beach already had left the area, D.G. requested and was permitted to leave in the car operated by Jonaven Perkins-Sinapati and owned by Defendant Brittany Miyake.

33.     Plaintiffs are informed and believe, and thereupon allege, that the car in which D.G. was riding was pursued at high speed by the Officer Defendants until the car left the roadway and crashed causing serious injuries to the driver and all of its occupants.

34.     Plaintiffs are informed and believe, and thereupon allege, that despite observing the crash, Officer Defendants simply drove away and failed to provide aid or assistance to the injured parties, including Plaintiffs' minor son.

35.     Plaintiffs are informed and believe, and thereupon allege, that sometime later, after emergency medical personnel responded to the scene of the crash, Officer Defendants returned and acted as if they had no knowledge of what had transpired.

36.     Plaintiffs are informed and believe, and thereupon allege, that certain of the Defendants then conspired to prepare and issue false reports about the crash in which they characterized the event as an unattended "single car accident" and failed to make any reference to the high-speed chase or to the respective roles of the Officer Defendants in causing the crash to occur.

37.     As a direct and proximate result of the foregoing, D.G. suffered catastrophic, painful, permanent, and disabling injuries to his neck, spine, back, and other parts of his body in amounts to be proven at trial.

38.     As a direct and proximate result of the foregoing, Plaintiffs have incurred costs and will continue to incur enormous expenses for the medical treatment, care and maintenance of their minor son in amounts to be proven at trial.

39.     As a direct and proximate result of the foregoing, Plaintiffs and the members of Plaintiffs' extended family have suffered great mental anguish,

suffering, pain, and anger as a result of the serious and permanent injuries suffered by D.G. in amounts to be proven at trial.

**B.      Honolulu Police Department's Motor Vehicle Pursuit Policy**

40.     Honolulu Police Department Policy 4.01 governs motor vehicle pursuits.  It recognizes that motor vehicle pursuits may be hazardous but leaves to the judgment of the participating officers if and when a motor vehicle pursuit is to be initiated.  The policy identifies no specific crimes or circumstances for which a motor vehicle pursuit should never be initiated and merely instructs participating officers to use their best efforts to apply common sense, training, experience, and departmental guidelines in their decision making and to weigh the need to apprehend the suspect against the need to avoid harm to persons or property.

41.     Policy 4.01 authorizes an officer to initiate a pursuit if the officer directs the driver to stop but the driver "exhibits intentions of eluding the officer by being evasive."

42.     Policy 4.01 requires the initiating officer to use blue lights and siren, to report the pursuit to dispatch, to provide the reason for the pursuit, to announce and update the location and direction of the pursuit, the vehicle's description, license plate and occupants, as well as the speed, weather conditions, and pedestrian and vehicular traffic involved.  A supervisor shall be assigned to monitor the pursuit and to terminate the pursuit if continuing it becomes too dangerous.

43.     In contrast, in 2015, the International Association of Chiefs of Police proposed a model pursuit policy that authorizes a pursuit "only if the officer has a reasonable belief that the suspect, if allowed to flee, would present a danger to human life or cause serious injury" and discourages pursuits for minor violations.

44.     Consistent with this model policy, policies of other police departments in more than thirty other cities of comparable size to Honolulu direct their officers to engage in motor vehicle pursuits only if a violent crime is involved or to prevent an imminent danger to the public.  Many of these other departments prohibit pursuits for property crimes and traffic violations.

45.     The Honolulu Police Department has a Pursuit Review Board to determine whether motor vehicle pursuits engaged in by officers comply with department policy.

46.     Of the pursuits reviewed by the Pursuit Review Board in 2019, more than 40% were initiated for traffic violations.

47.     Of the pursuits reviewed by the Pursuit Board in 2020, more than 30% were initiated for traffic violations.

48.     Of the pursuits reviewed by the Pursuit Review Board in 2019 and 2020, 32% of them involved a collision resulting in property damage.  Of those 32%, 42% involved physical injury.

49.     Between 2017 and 2019, 65% of pursuits that involved a collision were initiated for property crimes and traffic violations.

50.     All of these pursuits initiated for traffic violations would be prohibited under policies in existence for many police departments in cities comparable in size to Honolulu.

51.     In 2020, the Pursuit Review Board found that thirteen officers failed to declare a pursuit and notify dispatch when the pursuit was initiated.  Of those thirteen, eleven were given written notices, one was given verbal counseling, and one was given a written reprimand.  In addition, two officers were disciplined for failing to activate their body worn cameras during a pursuit, and six officers were disciplined for failing to terminate a pursuit when ordered to by a supervisor.

52.     In 2018, Pursuit Review Board Chair William Baldwin was alarmed by the number of officers sidestepping Policy 4.01 by merely failing to declare the pursuit.  Baldwin noted that, "Particularly troublesome is the fact that some officers believe that if they say they were 'following' as opposed to 'pursuing' a vehicle that the policy does not apply to them."

53.     In 2020, Pursuit Review Board Chair Major Calvin Tong called for officers to receive additional in-service training in clearly articulating the justification for initiating a pursuit and in risk assessment so that "officers will have the knowledge to make responsible decisions on when to self-terminate a motor

vehicle pursuit based on the totality of the events and situations that present itself as the motor vehicle pursuit progresses."

54.     These deficiencies in Policy 4.01 and the training associated Policy 4.01 have resulted in several pursuits causing death and bodily injury dating back to 2017.

55.     In December of 2017, Honolulu Police Department officers pursued Lawrence Williams, Jr., who was allegedly driving a stolen vehicle at speeds of up to 90 miles per hour, until he crashed and died at the intersection of Vineyard Boulevard and Palama Street.

56.     On June 28, 2019, Honolulu Police Department officer Sheldon Watts pursued Alins Sumang through Kakaako at speeds of up to 60 miles per hour without lights and sirens until Sumang struck and killed three pedestrians and seriously injured two others at the intersection of Ala Moana Boulevard and Kamakee Street.

57.     Prior to the pursuit, Sumang had struck some parked vehicles, and Watts claimed to be trying to locate and follow Sumang but not pursue him.

58.     When sued by the family of Dr. William Travis Lau, one of the pedestrians who was killed by Sumang, the Department of Corporation Counsel elected not to answer the civil complaint and settled the case for 10 million dollars some fifteen months after it was filed.

59.     On June 19, 2019, Honolulu Police Department officers pursued a vehicle southbound on Queen Emma Street that failed to stop.  That pursuit ended when the vehicle crashed into a state parking garage near the Department of Education building on South Vineyard Boulevard.  The driver escaped on foot and the passenger died after being taken to Queen's Medical Center.

60.     On May 30, 2021, Honolulu Police Department officers pursued a speeding driver through Waikiki at a high rate of speed.  That pursuit ended when the vehicle crashed into a pole and an ironwood tree near the intersection of Kalakaua Avenue and Poni Moi Road and the driver, Matthew Zuchowski was killed.

61.     Based on the foregoing, the Honolulu Police Department and the City and County of Honolulu were certainly on notice that there was a substantial risk of death and serious bodily injury associated with the way motor vehicle pursuits were being conducted by their officers pursuant to Policy 4.01, that Policy 4.01 was defective, and that officer training in the area of motor vehicle pursuits was deficient. Accordingly, their actions in this case demonstrate that they recklessly and callously disregarded a substantial risk that D.G. would be seriously harmed when he was pursued by Officers Nahulu, Bartolome, and Smith on September 12, 2021.

**C.     The Investigation of the September 12, 2021 Motor Vehicle Pursuit Resulting in D.G.'s Injuries**

62.     On or about October 14, 2021, the Professional Standards Office of the Honolulu Police Department ("PSO") began investigating the September 12, 2021 motor vehicle pursuit involving D.G.

63.     Shortly thereafter, Deputy Chief Vanic restricted the police authority of the Officers Nahulu, Smith, and Bartolome and placed them on desk duty.

64.     In November of 2021, PSO conferred the findings of its criminal investigation with the Department of the Prosecuting Attorney.   PSO's administrative investigation remained ongoing.

65.     In February of 2022, Defendant Alm informed the Honolulu Police Department that the Department of the Prosecuting Attorney would be conducting its own independent investigation of the September 12, 2021 incident.

66.     In February of 2023, PSO completed its administrative investigation of Officers Nahulu, Bartolome, Smith, and Lewis and forwarded its findings to Administrative Review Board of the Honolulu Police Department ("ARB").   The ARB scheduled a hearing in March of 2023 after which it would make a recommendation to Chief Logan as to what personnel action he should undertake.

67.     On March 16, 2023, Defendant Alm through Deputy Prosecuting Attorney Scott K. Bell, filed a felony information and non-felony complaint charging Officer Nahulu with leaving the scene of a collision involving death or

16

serious bodily injury to Jonaven Perkins-Sinapati, in violation of H.R.S. § 291C-12, Officers Smith, Bartolome, and Lewis with hindering the prosecution of Officer Nahulu, in violation of H.R.S. §§ 710-1029 and 710-1028(4), and Officers Nahulu, Smith, Bartolome, and Lewis with conspiring to hinder the prosecution of Officer Nahulu, in violation of H.R.S. §§ 705-520, 710-1029, and 710-1028(4).

68.    No criminal charges were ever filed by Defendant Alm against Officers Nahulu, Smith, Bartolome, or Lewis with respect to the life-threatening injuries inflicted upon D.G. as the result of the September 12, 2021 pursuit.

69.    Shortly thereafter, Defendant Alm, on behalf of the Department of the Prosecuting Attorney, shared the results of its independent criminal investigation with PSO.  PSO then conducted additional interviews and supplemented its report to ARB.

70.    On July 14, 2023, it was reported that the ARB recommended to Chief Logan that he terminate Officers Nahulu, Bartolome, Smith, and Lewis.  Chief Logan later disputed that report as inaccurate.

71.    On August 2, 2023, Chief Logan told the Honolulu Police Commission that he had decided on what disciplinary action to take against Officers Nahulu, Bartolome, Smith, and Lewis and had notified the officers of the same but could not disclose what that action was because of protections contained within the collective

bargaining agreement between the department and SHOPO, the police officers' union.

72.     Some two years later, it is undetermined what disciplinary action, if any, has been taken by Chief Logan against Officers Nahulu, Bartolome, Smith, and Lewis despite being charged criminally in March of 2023.

73.     Throughout this two year period, Mayor Blangiardi has refused to accept or acknowledge responsibility for the actions of Officers Nahulu, Bartolome, Smith, and Lewis which caused Plaintiff's injuries or authorize Corporation Counsel Viola to settle Plaintiff's claim despite the fact that liability is almost certain based on the felony information filed against them.

**D.     The Civil Litigation in 1CCV-21-0001150 KTM**

74.     On September 21, 2021, Plaintiffs sued the City and County of Honolulu, Doe Officer Defendants, Johnathon Sinapati, Brittany Miyake, and Doe Defendants alleging negligence and assault and battery claims.

75.     On October 6, 2021, Plaintiffs served their First Request for Production of Documents on the City and County of Honolulu.

76.     On November 5, 2021, Viola, through Deputy Corporation Counsel Derek T. Mayeshiro responded to Plaintiffs document production request. Mayeshiro made broad general objections of vagueness, overbreadth, and disproportionality as well citing the existence of a pending investigation and privacy

concerns under H.R.S. Chapter 92F.  Mayeshiro produced 43 pages of discovery consisting of H.P.D. Policies 4.01, 2.57, 7.02, and four pages of EMS reports.

77.    On December 13, 2021, Plaintiffs filed a motion to compel discovery. Viola, through Mayeshiro, filed an opposition to Plaintiffs' motion which included a declaration from First Deputy Prosecuting Attorney Thomas J. Brady attesting to his knowledge and awareness of the civil action and the pendency of the criminal investigation being conducted by the Department of the Prosecuting Attorney.

78.    That motion was heard on January 27, 2022 and granted in part and denied in part.  The City and County of Honolulu was ordered to produce all police reports and/or records, or portions thereto pertaining to the events of this lawsuit by May 7, 2022.

79.    On February 25, 2022, Plaintiffs filed their First Amended Complaint naming Officers Nahulu, Bartolome, and Smith as defendants.

80.    On May 19, 2023, the City and County of Honolulu filed its Responsive Pretrial Statement in which it named Alm as one of its trial witnesses.

81.    On April 8, 2022, attorney Michael Stern sued the City and County of Honolulu and other defendants on behalf of the four other passengers in the vehicle in which D.G. was riding on September 12, 2021.

82.    The other passengers in the vehicle represented by Stern suffered broken bones, fractured ribs, a fractured spine, and the loss of an eye.

83.    On February 7, 2023, the City and County of Honolulu settled with Stern's clients in the amount of 4.5 million dollars.   That settlement was subsequently approved by the City Council.

84.    To date, neither Viola nor any of the Deputy Corporation Counsel under her direction has made a concrete settlement offer to Plaintiffs regarding compensation for his injuries suffered at the hands of Officers Nahulu, Bartolome, and Smith.

**FIRST CAUSE OF ACTION**
**(42 U.S.C. Section 1983 – Fourth Amendment Violation Excessive Force)**
**(Against Defendants Nahulu, Bartolome, Smith, and Lewis)**

85.    Plaintiffs hereby incorporate all of the allegations contained in Paragraphs 1 through 84, above.

86.    42 U.S.C. § 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and the laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

87.    At all times relevant hereto, Defendants Nahulu, Bartolome, Smith, and Lewis were persons who acted and purported to act under color of law.

88.    Defendants Nahulu, Bartolome, Smith, and Lewis violated D.G.'s rights under the Fourth Amendment of the Constitution of the United States and

Article I, Section 7 of the Constitution of the State of Hawaii to be free from unreasonable searches and seizures by unlawfully and forcibly seizing D.G. by way of the motor vehicle pursuit and crash and subjecting him to excessive and unreasonable deadly force in the course of seizing and stopping him.

89.     Defendants Nahulu, Bartolome, Smith, and Lewis acted knowingly, willfully, with malicious intent, and in reckless and callous disregard of D.G.'s constitutional rights.

90.     D.G.'s constitutional rights under the Fourth Amendment and Article I, Section 7 are clearly established rights that any reasonable officer knew or should have known, thus Defendants Nahulu, Bartolome, Smith, and Lewis are not entitled to qualified and/or conditional immunity.

**SECOND CAUSE OF ACTION**
**(42 U.S.C. Section 1983 – Fourteenth Amendment Violation of Bodily Integrity)**
**(Against Defendants Nahulu, Bartolome, Smith, and Lewis)**

91.     Plaintiffs hereby incorporate all of the allegations contained in Paragraphs 1 through 84, above.

92.     42 U.S.C. § 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and the laws, shall be liable to the

party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

93.     At all times relevant hereto, Defendants Nahulu, Bartolome, Smith, and Lewis were persons who acted and purported to act under color of law.

94.     By engaging in the conduct alleged herein Defendants Nahulu, Bartolome, Smith, and Lewis unlawfully seized D.G. and violated D.G.'s rights under the Substantive Due Process Clause of the Fourteenth Amendment of the Constitution of the United States and Article I, Section 7 of the Constitution of the State of Hawaii to be safe and secure in his bodily integrity.

95.     Defendants Nahulu, Bartolome, Smith, and Lewis acted knowingly, willfully, with malicious intent, and in reckless disregard for D.G.'s constitutional rights.

96.     D.G.'s constitutional rights to bodily integrity under the Fourteenth Amendment and Article I, Section 7 are clearly established rights that any reasonable officer knew or should have known, thus Defendants Nahulu, Bartolome, Smith, and Lewis are not entitled to qualified and/or conditional immunity.

## THIRD CAUSE OF ACTION
**(42 U.S.C. Section 1983 – Municipal Liability - Grossly Deficient Policies)**
**(Against Defendant City and County of Honolulu)**

97.     Plaintiffs hereby incorporate all of the allegations contained in Paragraphs 1 through 84, above.

98.     Defendant City and County of Honolulu has a duty to enact specific affirmative policies and procedures to prevent constitutional harms from occurring, and to sufficiently supervise and train HPD officers to protect the public from harm.

99.     Defendant City and County of Honolulu breached its duty by promulgating, implementing, and applying Policy 4.01, a constitutionally defective motor vehicle pursuit policy which allows officers too much discretion in deciding to initiate a motor vehicle pursuit and provides insufficient guidance on when and on what basis to initiate or terminate a pursuit.

100.    Policy 4.01 is out of line with motor vehicle pursuit policies of comparably sized police departments in other states that prohibit or discourage pursuits in cases involving property crimes or traffic violations or restrict pursuits to cases involving violent crimes or the risk of imminent danger to the public.  Because of the defects in Policy 4.01, the policy is deliberately and callously indifferent to the known and substantial risk that the pursuit will result in death or serious bodily injury to the subject being pursued or to innocent bystanders.

101.    Officials from Defendant City and County of Honolulu and Honolulu Police Department have been on notice of recent numerous and severe instances where their police officers have engaged in unnecessary and unwarranted motor vehicle pursuits resulting in death or serious bodily injury.

102.   Defendant City and County of Honolulu's failure to address the fundamental deficiencies identified herein and failure to develop and enact different affirmative policies and procedures amounts to deliberate indifference to D.G.'s constitutional rights.

103.   Defendant City and County of Honolulu's promulgation, implementation, and use of Policy 4.01 was the moving force behind the deprivation of D.G.'s constitutional rights under the Fourth and Fourteenth Amendment of the United States Constitution and Article I, Section 7 of the Hawaii Constitution.

## FOURTH CAUSE OF ACTION
### (42 U.S.C. Section 1983 – Municipal Liability – Failure to Train)
### (Against Defendant City and County of Honolulu)

104.   Plaintiffs hereby incorporate all of the allegations contained in paragraphs 1 through 84, above.

105.   Defendant City and County of Honolulu was aware that motor vehicle pursuits by Honolulu Police Department officers are a routine and recurring event.

106.   Defendant City and County of Honolulu was aware that its police officers often violated Policy 4.01 by failing to announce and declare a pursuit to dispatch, by failing to articulate a sufficient justification for the pursuit at its inception, by failing to recognize circumstances calling for the termination of a pursuit, and failing to obey an order from a supervisor to terminate a pursuit.

107.   Defendant City and County of Honolulu was aware that at least two of its Pursuit Review Board chairs called for and recommended additional in-service training in 2018 and 2020 to address these shortcomings and violations of policy.

108.   Defendant City and County of Honolulu was also aware that violations of Policy 4.01 were often dealt with summarily and leniently.

109.   In response, Defendant City and County of Honolulu did nothing to address these deficiencies in training and discipline.  This failure played a substantial part in bringing about the serious bodily injury suffered by D.G. as well as the deaths and serious bodily injury to others between 2017 and 2021.

110.   These deaths and serious bodily injuries resulting from motor vehicle pursuits were the known and obvious consequence of Defendant City and County of Honolulu's failure to adequately train its officers.

111.   This failure to train by Defendant City and County of Honolulu reflected a callous and reckless indifference to D.G.'s constitutional rights under the Fourth and Fourteenth Amendments of the Constitution of the United States and Article I, Section 7 of the Constitution of the State of Hawaii.

### FIFTH CAUSE OF ACTION
**(State RICO – Hawaii Revised Statutes, Section 842, et. seq.)**
**(Against Defendants Blangiardi, Vanic, Logan, Alm, and Viola)**

112.   Plaintiffs hereby incorporate all of the allegations contained in Paragraphs 1 through 84, above.

25

113.   Mayor Blangiardi, the chief executive of the city, Chief Logan, the head of the Honolulu Police Department, Alm, the city's prosecutor, and Viola, the city's attorney constitute an enterprise in that they are a group of individuals associated for a particular purpose which exists separate and apart from the pattern of activity in which it is engaged.

114.   This group of individuals comprises an ongoing organization with specific functions performed by specific individuals under the direction and control of Mayor Blangiardi.  This group has an ascertainable structure distinct from that inherent in the conduct of the racketeering activity.

115.   This racketeering enterprise engaged in extortion by exerting control over Plaintiffs' property, that being Plaintiffs' cause of action against the City and County of Honolulu as alleged in 1CCV-21-0001150 KTM.

116.   These public servants committed extortion by threatening to take or withhold action in order to devalue and discredit Plaintiffs' cause of action.

117.   Chief Logan has refused to take any disciplinary action against Officers Nahulu, Bartolome, Smith, and Lewis despite compelling and overwhelmeing evidence that they caused D.G.'s profound and permanent injuries, and all four officers continue to be paid while their police powers are restricted.

118.   Alm has refused to charge Officers Nahulu, Bartolome, Smith, and Lewis with any crimes committed against D.G. Alm's office has been a knowing

and active participant with Viola in withholding discovery from Plaintiffs in 1CCV-21-0001150 KTM, and Alm is identified as a trial witness in the City's pretrial statement.  Alm's refusal to charge the officers with any crimes against D.G. was likely an attempt to shield the city from further liability.

119.   Viola has refused to make any settlement offer to Plaintiffs or to negotiate in good faith despite the fact that liability is almost certain based upon of the compelling and overwhelming evidence in the case.  Her actions in this case stand in stark contrast to her actions in Dr. William Travis Lau's case where she elected not to answer his family's civil complaint and quickly settled the case for 10 million dollars.  Her actions in this case also stand in stark contrast to her actions regarding the four other passengers in the vehicle in which D.G. was riding on that fateful night.  She settled with the four other passengers, also gravely injured, for 4.5 million dollars after a period of only fourteen months.

120.   In the almost two years this case has been pending, Mayor Blangiardi, the city's chief executive, has refused to accept or acknowledge responsibility for the actions of Officers Nahulu, Bartolome, Smith, and Lewis which caused D.G.'s injuries or authorize or urge Viola to settle Plaintiff's claim despite the fact that liability is almost certain given the compelling and overwhelming evidence in the case.  The quick and significant settlements in the Lau case and with the four other

passengers in the vehicle with D.G. can also be laid at his feet as they could not have occurred without his knowledge and approval.

## SIXTH CAUSE OF ACTION
### (Declaratory Judgment and Injunctive Relief – All Defendants)

121.   Plaintiffs hereby incorporate all of the allegations contained in paragraphs 1 through 84, above.

122.   Plaintiffs and D.G. continue to be fearful that they will be subjected to unconstitutional abuses from Defendants pursuant to the Honolulu Police Department's *de facto* policy and/or grossly deficient policies and procedures.

123.   Based on the facts set forth above, there exists a sufficient degree of immediacy and concern to warrant issuance of a declaratory judgment and/or injunction: (1) preventing and restraining the Defendants from continuing to violate Plaintiffs' rights; (2) requiring that Defendant City and County of Honolulu enact affirmative policies and procedures to identify, disclose, and prevent conflicts of interest in law enforcement; and (3) requiring Defendants to expunge any and all criminal and/or arrest records for J.R. generated as a result of Defendants' unconstitutional conduct.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for the following relief:

A.   Declaratory relief;

B.   Injunctive relief;

C.   General and special damages;

D.   Punitive damages;

E.   Reimbursement of attorneys' fees and costs;

F.   Any other relief the Court deems just and proper.

DATED:  Honolulu, Hawaiʻi, September 11, 2023.


/s/ Eric A. Seitz
ERIC A. SEITZ
DELLA A. BELATTI
JONATHAN M.F. LOO

Attorneys for Plaintiffs

29